FILED

SEP -7 2023

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
    Plaintiff,                       )
                                     )
v.                                   )    4:23-cr-00481 MTS
                                     )
BRANDON ADAMS,                       )
                                     )
    Defendant.                       )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Brandon Adams, represented by defense counsel Craig Concannon, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 2 and 3 of the Information, the government agrees that no further federal prosecution will be brought in this District relative to the defendant's distribution, and conspiracy to distribute including by means of the Internet, alprazolam, amphetamine, and counterfeit/misbranded drugs and the laundering of money related to such activity from October 2019 through May 2021, of which the government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that ~~because~~ neither party ~~shall~~ request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

*[handwritten: may JW, CJC, BA]*

### 3. ELEMENTS:

The defendant admits to knowingly violating Title 21, United States Code, Section 846, Title 18, United States Code, Section 371, and Title 21, United States Code, Section 331(i)(3), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**COUNT 1**
**21 USC 846**
**(Conspiracy to distribute a controlled substance including by means of the Internet)**

*One*, defendant and one other person reached an agreement to distribute controlled substances including by means of the Internet;

*Two*, defendant voluntarily and intentionally joined the agreement; and

*Three*, at the time defendant joined in the agreement, he knew its purpose.

**COUNT 2**
**18 USC 371**
**(Conspiracy to misbrand, cause the introduction of misbranded, and sell counterfeit, drugs)**

*One*, defendant and one other person reached an agreement to misbrand, cause the introduction of misbranded, and sell counterfeit drugs;

*Two*, defendant voluntarily and intentionally joined the agreement; and

*Three*, at the time defendant joined in the agreement, he knew its purpose; and

2

*Four*, defendant knowingly committed an overt act in furtherance of the agreement while it was in effect.

## COUNT 3
## 21 USC 331(i)(3)
### (Sale and dispensing of counterfeit drugs)

*One*, defendant sold and dispensed drugs; and

*Two*, the drugs defendant sold and dispensed were counterfeit drugs.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Alprazolam is a benzodiazepine used to treat anxiety disorders. Alprazolam is assigned to Schedule IV of the Controlled Substances Act. Pfizer Pharmaceuticals markets its pills containing alprazolam under the brand name Xanax. Several companies sell generic versions of Xanax. These generic versions have stamping with identifying numbers such as, "B707" supplied by Breckenridge Pharmaceutical, Inc. 51911-0707, "2090" supplied by Qualitest Pharmaceuticals, Inc. 00b03-2130, and "S903" supplied by Dava Pharmaceuticals, Inc. 67253-0903. Bromazolam and clonazolam are both benzodiazepine derivatives that are not scheduled substances. Neither are ingredients in Xanax.

Since at least October 2019, until May 2021, Defendant Adams operated as a vendor of counterfeit/misbranded drugs on the Darknet using the moniker "BenzoBoys." Defendant primarily sold counterfeit Xanax and generic equivalents, both with alprazolam and with bromazolam and clonazolam. Defendant obtained a pill press with imprint stamps that are substantially indistinguishable from marks by pharmaceutical companies selling generic forms of

3

Xanax as referenced above. These imprints, combined with the appropriate color, shape, and size of pill, mimicked legitimate product so as to deceive, cause confusion or mistake.

Defendant conducted his manufacturing operation at a secluded lake house outside the city limits of Sullivan, Missouri.

Usually defendant communicated with customers through the anonymous, encrypted messaging service, Wickr Me. Customers placed orders through Wickr Me and usually made payment to defendant by Bitcoin cryptocurrency. Having received payment, defendant would deliver his processed pills either by mail or by dropping them at previously determined "dead drop" sites to be later collected by the customer. In total defendant sold millions of pills, well exceeding the maximum 9.99 kilograms of converted drug weight allowable for Schedule IV controlled substances by the United States Sentencing Guidelines.

Defendant sold to many customers throughout the United States, including G.F., residing in Florida, J.C., residing in New York, M.P., residing in Ohio, and M.V., residing in Washington. G.F. bought large quantities of misbranded drugs from defendant, using cryptocurrency. Defendant mailed packages containing 30,000 pills to G.F. on November 3 and 6, 2020, on November 23, 2020, and on April 27 and 29, 2021.

J.C. ordered very large quantities of misbranded drugs, in the hundreds of thousands from defendant and paid in cryptocurrency. Defendant mailed packages to J.C. containing bulk quantities of misbranded drugs on August 13, 2020 and November 3, 2020.

M.P. usually bought misbranded drugs from defendant in 100,000 amounts, paying in cryptocurrency. Defendant mailed packages containing 100,000 misbranded pills to M.P. on August 31, 2020, September 3, 2020, and September 10, 2020.

M.V. bought varying amounts of misbranded drugs from defendant, paying in cryptocurrency. Defendant mailed a package to M.V. containing 20,000 misbranded pills on January 2, 2020, 60,000 misbranded pills on June 13, 2020, and approximately 40,000 misbranded pills on June 19, 2020.

Several people assisted defendant in the production and distribution of the pills. J.H. was defendant's partner in the criminal activity until his untimely death due to a drug overdose. C.B. used the pill press to manufacture pills but was fired by defendant for being slow at his work and not cleaning the machines. Defendant hired C.B. as a replacement, who in addition to processing pills, delivered pills for dead drops and accepted package deliveries of binder and other items used in the manufacturing of pills. Defendant utilized L.L. to manufacture and self-distribute pills locally. Defendant also involved his girlfriend, E.S., who addressed and delivered pill packages to post offices for mailing to customers.

After law enforcement made several undercover purchases from defendant via the Internet, search warrants were executed on May 27, 2021 at his apartment in Sullivan, Missouri and the lake house. At the lake house agents discovered the pill press, tens of thousands of misbranded pills, bags of pill binder in powder form, and bags labeled clonazolam and alprazolam.

At defendant's apartment, agents discovered approximately $630,000 in cash. In defendant's bedroom closet, next to a pouch containing a large amount of cash was a Century Arms ak style rifle and a Thompson semiautomatic rifle on the floor of the closet. Approximately $330,000 in Bitcoin belonging to defendant was also seized on that day.

While the majority of the proceeds from this criminal activity were realized in cryptocurrency, defendant conducted monetary transactions with his profits by exchanging Bitcoin for cash with an unlicensed money remitter in amounts exceeding $10,000. Defendant stored the

converted currency at his apartment and comprised a large portion of the approximately $630,000 in cash seized from that location on May 27, 2021.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is: for Count 1, imprisonment of not more than 5 years, a fine of not more than $250,000 or both such imprisonment and fine; for Count 2, imprisonment of not more than 5 years, a fine of not more than $250,000, or both; and for Count 3, imprisonment of not more than 10 years, a fine of not more than $250,000, or both. The Court shall also impose a period of supervised release of at least 1 year on Count 1, and may impose a term of not more than 3 years of supervised release on Counts 2 and 3.

## 6. U.S. SENTENCING GUIDELINES: 2022 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct:**

**COUNT 1**

(1) **Base Offense Level:** The parties agree that the base offense level is 14, as found in Section 2D1.1(c). The parties agree that the quantity of alprazolam for which the defendant is accountable, including relevant conduct, is in excess of 9.99 kilograms of converted drug weight, but as a Schedule IV controlled substance is limited to 9.99 kilograms converted drug weight and that the quantity of amphetamine for which defendant is accountable is 5 grams, equaling 2 kilograms converted drug weight, resulting in the agreed Base Offense Level.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(1), because a firearm was possessed, that 2 levels should be added because defendant mass-marketed by means of an interactive computer service pursuant to Section 2D1.1(b)(7), and that 2 levels should be added as defendant maintained a premises for the purpose of manufacturing controlled substances pursuant to Section 2D1.1(b)(12).

### COUNT 2

**(1) Base Offense Level:** The parties agree that the base offense level is 6, pursuant to Section 2N2.1(c)(1) cross-referenced to 2B1.1(a)(2).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

14 levels are added pursuant to Section 2B1.1(b)(1)(H) as the loss exceeded $550,000 but was less than $1,500,000; 2 levels are added pursuant to Section 2B1.1(b)(2)(A) as the offense involved more than 10 victims; and 2 levels should be added pursuant to Section 2B1.1(b)(11) as the offense involved the production of a counterfeit authentication feature.

### COUNT 3

**(1) Base Offense Level:** The parties agree that the base offense level is 6, pursuant to Section 2N2.1(c)(1) cross-referenced to 2B1.1(a)(2).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

14 levels are added pursuant to Section 2B1.1(b)(1)(H) as the loss exceeded $550,000 but was less than $1,500,000; 2 levels are added pursuant to Section 2B1.1(b)(2)(A) as

the offense involved more than 10 victims; and 2 levels should be added pursuant to Section 2B1.1(b)(11) as the offense involved the production of a counterfeit authentication feature.

**b. Chapter 3 Adjustments:**

**(1) Grouping:** The counts are grouped together under Section 3D1.2(c). Count 2 produces the highest offense level at 24 and is applied pursuant to Section 3D1.3.

**(2) Role in the Offense:** The parties agree that 4 levels should be added pursuant to Section 3B1.1(a) as defendant was a leader of the criminal activity involving 5 or more participants.

**(3) Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 25.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

8

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately. There are no identifiable victims to which restitution should be made.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items including any illicit substances, pill manufacturing appliances, cash, digital currency, firearms, and electronic devices, and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

9/6/23
Date

_____
JOHN J. WARE
Assistant United States Attorney

7/31/2023.
Date

_____
BRANDON ADAMS
Defendant

7/31/23
Date

_____
CRAIG CONCANNON
Attorney for Defendant

14